Opinion dissenting in part filed by Circuit Judge REYNA.
TARANTO, Circuit Judge.
Kraft Foods Global Brands LLC (now called Intercontinental Great Brands) owns U.S. Patent No. 6,918,532, which issued in 2005 and was supplemented with additional claims on reexamination in 2011. The ’532. patent, describes and claims a food package that, after opening, can be resealed to maintain the freshness of the food items inside. Kraft brought this patent-infringement suit against Kellogg North America Co., Keebler Foods Co., and affiliates (collectively, Kellogg) in the Northern District of Illinois. The district court held that Kellogg was entitled to summary judgment of invalidity for obviousness of the asserted claims of the ’532 patent. Intercontinental, Great Brands LLC v. Kellogg N. Am. Co., 118 F.Supp.3d 1022, 1027-42 (N.D. Ill. 2015). The court also held that Kraft was entitled to summary judgment rejecting Kellogg’s counterclaim of unenforceability of the patent due to alleged inequitable conduct by Kraft, chiefly in an ex parte reexamination proceeding. Id. at 1044-45. We affirm.
I
The ’532 patent describes a combination of two known kinds of packaging. One, common for cookies, uses a frame surrounded by a wrapper. The other, common for wet wipes, uses a package on which the label may be pulled back to access the contents, then put back in place to reseal the package to preserve the items remaining inside.
Thus, the background section of the patent begins: “Containers for food products such as cookies and other snacks typically include a frame surrounded by an outer wrapper. The frame acts as. a tray to hold the food product and to protect the food product from damage.” ’532 patent, col. 1, lines 12-15. A person wanting to consume some but not all of the items in the package “normally” does so “by opening one end of the wrapper, withdrawing the tray from the inside thereof, and then removing the food product from the tray.” Id,, col. 1, lines 15-18. “[T]hese containers,” however, “generally do not provide a convenient opening and reclosing arrangement. For example, reclosing of the wrapper, once opened, generally includes simply folding or rolling the end down and clip-ping the end to keep the wrapper closed.” Id., col. 1, lines 19-23.
At the same time, “[r]eclosable seals have been used, for dispensing bags for wet tissue or disposable cleaning wipes.” Id., col. 1, lines 24-25. “The label on these bags can be pulled back thereby exposing an opening, allowing access to "the wet tissues or wipes inside.” Id., col. 1, lines 25-27. “Typically,” however-, “those dispensing bags” lack a rigid internal structure, ie., “are completely flexible, formed exclusively of a plastic or other suitable flexible material which closely surrounds the pack of wet tissues or wipes.” Id., col. 1, lines 27-30. Lacking an internal rigid structure, “such known dispensing bags are not well suited for containing food products as *1340 these containers fail to provide adequate protection for storing food products.” Id., col. 1, lines 34-36.
The patent then introduces the invention:
The purpose of the present invention is to provide a new and improved container for food products such as rigid food articles, for example cookies and the like, which container provides adequate protection for the contents thereof, while concurrently facilitating opening of the container wrapper and resealing the seal to protect the contents thereof until the contents are fully consumed.
Id., col. 1, lines 39-46.
Claim 1, which is largely representative for purposes of this appeal, recites as follows:
1. A polygonal shaped food container comprising:
a frame defining the polygonal shape of the container, said container having a top, a bottom[,] and sides connecting the top and bottom, the frame containing a food product comprised of discrete food articles;
a wrapper surrounding said frame, said wrapper forming the top[,] sides[,] and bottom of the container;
said top having an access opening sufficiently large to provide hand access to substantially all of the discrete food articles contained within the frame, such that substantially any one of the discrete food articles can be accessed and removed individually through said access opening; and
a sealing layer, adhesively sealed to said top around said opening, said sealing layer including a starter portion located near a side of the top which can be grasped by a user, said sealing layer being releasable when said starter portion is pulled in a direction away from said side to in turn pull and thereby release at least a portion of said sealing layer to provide the hand access to said top access opening and reclosable against said top to seal said opening when said sealing layer is moved back against the said top.
Id., col. 5, lines 29-51.
In October 2007, about two years after the ’532 patent issued, a Swedish company that produces resealable packages sought an ex parte reexamination of that patent from the U.S. Patent and Trademark Office. Intercontinental, 118 F.Supp.3d at 1026. The Office initiated the reexamination, and in April 2010, the examiner (in the central reexamination unit) rejected all claims except two of the claims that Kraft added (to which the examiner objected), relying centrally on a short 2001 article in Packaging News that displayed and described Re-Seal It packaging made by a Swedish firm and marketed by Paramount Packaging. In August 2011, however, the Patent Trial and Appeal Board reversed all of the rejections. It relied critically on a particular phrase in the Packaging News article asserting the conventionality of the wrapping film to distinguish the Kraft patent claims — a phrase that does not appear in the descriptions of Paramount Re-Seal It packaging in the distinct prior-art articles that became central in the present litigation. Ex Parte Kraft Foods Global Brands LLC., No. 2011-005770, 2011 WL 3754634 (P.T.A.B. Aug. 19, 2011). The resulting reexamination certificate contained the original claims 1-25 and new claims 26-67.
In 2013, Kraft sued Kellogg for infringement of a number of claims of the ’532 patent. In particular, Kraft alleged that Kellogg infringed by making, using, selling, and offering certain resealable cookie packages that a Kellogg document suggested were designed to “‘circumvent[ ] the Kraft patent while maintaining similar properties.’ ” Intercontinental, 118 F.Supp.3d at 1026 (alteration in original). *1341 Kellogg responded by alleging, among other things, that the asserted claims of the ’532 patent were invalid for obviousness and that the patent was unenforceable due to inequitable conduct by Kraft before the Board in securing reversal of the examiner’s rejections during reexamination. Kellogg eventually moved for summary judgment of invalidity, and Kraft moved for summary judgment on Kellogg’s counterclaim of unenforceability due to inequitable conduct.[1]
The district court granted Kellogg’s motion for summary judgment of invalidity of all of the asserted claims (1, 3, 4, 6, 26, 32, 33, 34, 35, 36, 37, 39, and 42) under 35 U.S.C. § 103 (2006).[2] As the patent itself makes clear, the “frame” element is shown by prior art, such as U.S. Patent No. 3,740,238 issued to Graham, which discloses a traditional cookie package with a frame to hold the cookies, described as prior art in the ’532 patent. And while the patent makes clear that non-food prior art showed a peel-back resealable package without a rigid stmcture (packaging for wet wipes), what the patent does not show, but the record in this litigation reveals, is prior art showing a peel-back resealable package with a rigid tray for food items (“such as” discrete items like sushi and canapés) — namely, two related articles in the Machinery Update publication describing and showing a Re-Seal It package marketed in Britain by Paramount Packaging as an agent for Real-Seal It Sweden. See Machinery Update, March/April 2002 at 59-60 (J.A. 4423-24); Machinery Update, September/October 2001 at 46-47 (J.A. 4708-09).
First, considering independent claims 1 and 34, the district court concluded that the record put beyond reasonable dispute that all claim elements except the “frame” element were shown in the Machinery Update articles and the “frame” element was shown in the prior art of cookie packaging, such as the Graham patent. Intercontinental, 118 F.Supp.3d at 1030-34. The court then determined that the only reasonable inference on the record was that a relevant skilled artisan would have been motivated to combine those prior-art references. The court specifically stressed that the absence of a “convenient opening and reclosing arrangement” was a “known problem” for cookie packaging and that the Machinery Update resealable, tray-included packaging for foods offered a skilled artisan a solution to the problem simply by replacing the Machinery Update “tray” with a frame, ie,, a tray with higher sides. More generally, the court considered the simple and clear teachings of the art, the importance of common sense and ordinary creativity, and the conclusory character of Kraft’s expert’s assertions of nonobviousness. Id. at 1034-38. The court next analyzed the various dependent claims, finding no basis for a different conclusion about the art-based portion of the obviousness analysis. Id. at 1038-41.
Finally, the court concluded that Kraft’s evidence of certain objective indicia, though substantial, was simply not entitled to such weight in the ultimate legal assess *1342 ment of obviousness as to produce a bottom-line conclusion of anything but invalidity. Id. at 1041-42. In particular, the court determined that Kraft had strong evidence of.commercial success tied to the patent-claimed packaging, industry praise, and copying by Kellogg. Id. at 1041, Nevertheless, the court concluded, “this is a case in which the secondary considerations do not overcome Kellogg’s extremely strong prima facie showing that the invention was obvious in light of Machinery Update.” Id. The court explained:
In this case, the prior art references teach all of the claim limitations — all of the elements could be found in existing food packaging technology. In fact, nearly all of the elements were found in one Machinery Update article, and the rest already existed in cookie packages. Additionally, the technology is relatively simple. Based on these considerations, a person skilled in the art would have a reason to combine the elements to create the invention. In sum, the primary considerations lead to a conclusion that the invention was obvious in light of the prior art, and [Intercontinental’s] strong showing of secondary considerations does not outweigh this determination.
In sum, based on the undisputed facts, all of the asserted claims are invalid as obvious in light of Machinery Update when combined with existing cookie packages.
Id. at 1042.
With regard to Kellogg’s unenforceability. challenge to the ’532 patent, based chiefly on alleged inequitable conduct by Kraft in the reexamination proceeding, the court granted Kraft’s motion for summary judgment rejecting the challenge. Id. at 1044-45. The court explained that the charge of inequitable conduct during reexamination did not and could not rest on withholding by Kraft of material prior art; in particular, “[i]t is undisputed that [the 2002] Machinery Update [article] ... [was] presented during reexamination.” Id. at 1044. The court then addressed Kellogg’s key charge — that Kraft’s counsel did not tell the Patent and Trademark Office (PTO) that the phrase in the Packaging News article about the conventionality of the wrapping film, on which the Board came to rely in upholding Kraft’s claims, was actually a misprint, as allegedly made evident by the opposite characterization of the film used in Re-Seal It packaging in the 2002'Machinery Update article. The district court, while agreeing that the phrase in Packaging News likely was a misprint, concluded that Kraft’s counsel “merely restated the contents of the misprinted article” and “[tjhere is no evidence that the attorney knowingly failed to identify the inconsistency between the two articles.” Intercontinental, 118 F.Supp.3d at 1045. Kellogg thus had not presented evidence that could meet the standard for intent to deceive established in Therasense, Inc. v. Beeton, Dickinson & Co., 649 F.3d 1276, 1290-91 (Fed. Cir. 2011): (en banc). Intercontinental, 118 F.Supp.3d at 1045.[3]
*1343 Kraft appeals regarding invalidity. Kellogg cross-appeals regarding unenforceability. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
[[Image here]]
We review the district court’s grant of summary judgment.de novo. See Blow v. Bijora, Inc., 855 F.3d 793, 797 (7th Cir. 2017); Innovention Toys, LLC v. MGA Entm’t, Inc., 637 F.3d 1314, 1318 (Fed. Cir. 2011). “The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). A “material fact” is, one that “might affect the outcome” of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct, 2505, 91 L.Ed.2d 202 (1986); Williams v. Brooks, 809 F.3d 936, 941-42 (7th Cir. 2016); Crown Operations Int’l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002). A “genuine” dispute over a material fact exists only if it is “reasonable” on the summary-judgment record to find that fact, and therefore to reach a verdict, against the movant, taking into account the governing burden óf persuasion. Anderson, 477 U.S. at 248, 106 S.Ct. 2505 (“[A] material fact is ‘genuine’ ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.”); id. at 250-57, 106 S.Ct. 2505 (reiterating reasonableness inquiry and role of who has burden of persuasion and whether “clear and ’convincing evidence” or other standard applies); see Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (On summary judgment, “courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing” the motion, (emphasis added) (internal quotation marks omitted)); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (“[T]he court must draw all reasonable inferences in favor of the nonmoving party.”); U.S. Water Servs., Inc. v. Novozymes A/S, 843 F.3d 1345, 1350 (Fed. Cir. 2016); Laskin v. Siegel, 728 F.3d 731, 734 (7th Cir. 2013).
A
A claimed invention is unpatentable “if the differences between the claimed invention and, the prior art are such that the claimed invention as a whole would have been obvious” to one of ordinary skill in the relevant art. 35 U.S.C. § 103. Obviousness is a legal question based on underlying factual determinations. KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 406, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007); Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Randall Mfg. v. Rea, 733 F.3d 1355, 1362 (Fed. Cir. 2013). Among the factual determinations are “the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness.” Randall, 733 F.3d at 1362 (citing KSR, 550 U.S. at 406, 127 S.Ct. 1727; Graham, 383 U.S. at 17-18, 86 S.Ct. 684). Also a fact question, of significance here, is whether the relevant skilled artisan had a motivation to combine pieces of prior art in the way eventually claimed in the patent, at issue. Apple Inc. v. Samsung Elecs. Co., 839 F.3d 1034, 1047-48, 1051 (Fed. Cir. 2016) (en banc); PAR Pharm., Inc. v. TWI Pharm., Inc., 773 F.3d 1186, 1196 (Fed. Cir. 2014); Wyers v. Master Lock Co., 616 F.3d 1231, 1237-39 (Fed. Cir. 2010); see also, e.g., Skky, Inc. v. MindGeek; s.a.r.l., 859 F.3d 1014, 1021 (Fed. Cir. 2017) (applying the same standards to the Patent Trial and Appeal Board’s determination of obviousness in an inter partes review).[4] Once the relevant *1344 fact issues are resolved, “[t]he ultimate judgment of obviousness is a legal determination” for the court. KSR, 550 U.S. at 427, 127 S.Ct. 1727.
“In KSR, the Supreme Court criticized a rigid approach to determining obviousness based on the disclosures of individual prior-art references, with little recourse to the knowledge, creativity, and common sense that an ordinarily skilled artisan would have brought to bear when considering combinations or modifications” Randall, 733 F.3d at 1362. “[T]he Court required an analysis that reads the prior art in context, taking account of ‘demands known to the design community,’ ‘the background knowledge possessed by a person having ordinary skill in the art,’ and ‘the inferences and creative steps that a person of ordinary skill in the art would employ.’ ” Id. (quoting KSR, 550 U.S. at 418, 127 S.Ct. 1727). A “court must ask whether the [claimed] improvement is more than the predictable use” — a “predictable variation” — “of prior art elements according to their established functions,” considering whether more is involved than “the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement.” KSR, 550 U.S. at 417, 127 S.Ct. 1727. “[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.” Id. at 417, 127 S.Ct. 1727. The court should consider a range of real-world facts to determine “whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.” Id. at 418, 127 S.Ct. 1727; see id. (“[I]t can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.”). “One of the ways in which a patent’s subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent’s claims.” Id. at 419-20, 127 S.Ct. 1727.
Depending on the record, summary judgment of invalidity for obviousness may be appropriate. The Supreme Court ordered summary judgment in KSR after a careful determination of the facts put beyond genuine dispute by the record, and it explained that “a conclusory affidavit addressing the question of obviousness” does not “exclude the possibility of summary judgment.” Id. at 426, 127 S.Ct. 1727. Rather:
In considering summary judgment on that question the district court can and should take into account expert testimony, which may resolve or keep open certain questions of fact. That is not the end of the issue, however. The ultimate judgment of obviousness is a legal determination. Graham, 383 U.S. at 17 [86 S.Ct. 684]. Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.
Id. at 427, 127 S.Ct. 1727. Based on the required close examinations of case-specific records, this court, since KSR, has sometimes held summary judgment of obviousness unwarranted[5] and sometimes *1345 held it warranted.[6]
In this case, we conclude, the district court correctly determined that summary judgment was warranted on the record, for the reasons we have summarized in describing the district court’s opinion. Kraft’s arguments to the contrary are unpersuasive.
1
Kraft turns first to the objective indicia (secondary considerations) bearing on obviousness. Kraft’s Opening Br. 38-42. It contends that the district court treated the objective indicia as an “afterthought,” “writing off the patent before turning to objective indicia,” and “repeatedly not[ing] its finding of obviousness before considering the objective indicia.” Id. at 38, 40, 41. That contention mischaracterizes the district court’s reasoning, which followed a sequence that accords with KSR, Graham, and this court’s precedents.
The district court drew its conclusion of obviousness only after, not before, considering the objective indicia. Intercontinental, 118 F.Supp.3d at 1042. Before reviewing the objective indicia, the court concluded only that Kellogg had made a “strong prima facie showing of obviousness.” Intercontinental, 118 F.Supp.3d at 1037-38 (“Because there is no genuine dispute that all elements of claims 1 and 34 are disclosed in the prior art and it would have been predictable for a person of skill in the art to combine those elements, Kellogg has made a strong prima facie showing of obviousness as to independent claims 1 and 34.”); see id. at 1038-41 (same for asserted dependent claims). As its opinion shows, id. at 1034-37, the court drew that conclusion based on the Graham factors directed to identifying the teachings of the prior art, as well as the considerations this court has identified as bearing on the question of motivation to combine. See, e.g., Plantronics, 724 F.3d at 1354 (“ [Motivation to combine may be found explicitly or implicitly in market forces; design incentives; the ‘interrelated teachings of multiple patents’; ‘any need or problem known in the field of endeavor at the time of invention and addressed by the patent’; and the background knowledge, creativity, and common sense of the person of ordinary skill.”) (citing Perfect Web, 587 F.3d at 1328-29 (quoting KSR, 550 U.S. at 418-21, 127 S.Ct. 1727)).
The court thus did not draw an ultimate conclusion regarding obviousness before considering the objective indicia. The contrary is not shown by the court’s not-uncommon choice of words when conducting the ultimate weighing, namely, that the objective indicia “do not overcome Kellogg’s extremely strong prima facie show *1346 ing.” Intercontinental, 118 F.Supp.3d at 1041. See, e.g,, Ohio Willow, 735 F.3d at 1344 (similar usage); Perfect Web, 587 F.3d at 1333 (similar); cf. KSR, 550 U.S. at 426, 127 S.Ct. 1727 (secondary considerations do not “dislodge” the determination that the claim would have been obvious).
While withholding a conclusion as to obviousness until considering the objective indicia,’ the district court did draw the following conclusions before such consideration: “there was a known problem in the cookie packaging industry, and all of the elements of the invention. existed in the prior art”; “[a] packaging expert, with knowledge of .existing food packaging technology, would have thought , to combine a resealable container and a frame- big enough to contain cookies”; and the claimed “combination ‘would have been entirely predictable and grounded in common sense.”’ Intercontinental, 118 F.Supp.3d at 1035 (quoting Ball Aerosol & Specialty Container, 555 F.3d at 992-93). The court then concluded (before discussing objective indicia): “No reasonable jury could conclude that a person skilled in packaging design would not be motivated to, combine these features.” Id.
Kraft contends, that objective indicia must be evaluated before drawing a conclusion about whether a reasonable jury could find that a relevant skilled artisan had a motivation to combine the prior art, not merely before - drawing the ultimate obviousness conclusion. But it cites no precedent so holding.
Kraft does cite authorities confirming that, in some cases, objective indicia can be important evidence of obviousness, sometimes even the most important evidence. See, e.g., Plantronics, 724 F.3d at 1355; Crocs, Inc. v. Int’l Trade Comm’n, 598 F.3d 1294, 1310 (Fed. Cir. 2010). And it cites authorities that say, consistent with KSR and Graham, that objective indicia must be considered and given “fair weight” before a legal conclusion on obviousness is drawn. Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1391 (Fed. Cir. 1988); see Leo Pharm. Prods., Ltd. v. Rea, 726 F,3d 1346, 1357-58 (Fed. Cir. 2013); Plantronics, 724 F.3d at 1355; Power Integrations, Inc. v. Fairchild Semiconductor Int’l, Inc., 711 F.3d 1348, 1368 (Fed. Cir. 2013); In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1076 (Fed. Cir. 2012); see also Apple, 839 F.3d at 1058; Kinetic Concepts, Inc. v. Smith & Nephew, Inc., 688 F.3d 1342, 1368-71 (Fed. Cir. 2012); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1380-81 (Fed. Cir. 2000), But the district court here did just that. And Kraft cites no authority that requires consideration of objective indicia as part of the motivation-to-combine factual analysis.
The staged consideration undertaken by the district court,, and reflected in our cases, makes sense within the motivation-to-combine framework, a framework with which Kraft does not take issue. When á challenger shows that a “motivation” existed for a relevant skilled artisan to. combine prior art in the way. claimed in the patent at issue, such a showing .commonly supports and leads readily to the further, ultimate determination that such an artisan, using ordinary creativity, would actually have found the claimed invention obvious. But the latter conclusion does not follow automatically from the former finding, and additional evidence may prevent drawing it. Identification of a “motivation” to make the combination may not give a complete picture of what a skilled artisan, exercising ordinary creativity without the incentive of patent protection,2 would actually have found it obvious to “disdose[ ] or devise[ ]” at the relevant time, See Graham, 383 U.S. at 11, 86 S.Ct. 684 (explaining that when Con *1347 gress adopted § 103, and even before, “[t]he inherent problem was to develop some means of weeding out those inventions which would not-be disclosed or devised but for the inducement of a patent”). Even with a motivation proved, the record may reveal reasons that, after all, the court should not conclude that the combination would have been obvious, ie., already part of the public domain.[7] One type of such additional evidence consists of evidence of objective indicia — commercial success traceable to the claimed invention, industry praise, copying, and certain other facts concerning people’s actions and statements.
 This way of structuring the analysis implements the requirement that the approach to determining obviousness be “expansive” and “flexible.” See KSR, 550 U.S. at 415, 127 S.Ct. 1727. It reflects an understanding-of the role of “motivation” that fits our consistent treatment of that element of the analysis as factual in nature. And it fits the Supreme Court’s treatment of objective indicia as evidence to be weighed in the overall legal determination of obviousness. We see no error in the sequence of steps the district court took in arriving at its ultimate obviousness determination.
Kraft’s only argument about the objective indicia thus fails. Kraft cannot complain that the district court failed to credit its evidence regarding objective indicia: the district court accepted the facts Kraft asserted about commercial success, industry praise, and copying. What remains, for the objective indicia, therefore, is a weighing to produce a legal conclusion. But Kraft does not additionally argue to us, certainly not in a meaningful way, that in this particular case the objective indicia accepted by the district' court require a legal conclusion of nonobviousness if we agree with the district court as to the prior-art and motivation-to-combine elements of the analysis. Any implicit, undeveloped suggestion to that effect by Kraft is not enough on the record here, given the strength of the record on those elements, including the simplicity of the technology and combination at issue, the recognized problem of resealing for cookie packaging, and the strong teaching of the prior art just before the claimed priority date. See, e.g., Ohio Willow, 735 F.3d at 1344 (“[W]here a claimed invention represents no more than the predictable use of prior art elements according to established functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish nonobviousness.”). "
2
Kraft next argues that the district court improperly resolved genuine factual disputes. The district court concluded that the following were the only reasonable findings on the record: the Machinery Update articles (published shortly before Kraft’s priority date) disclose all the elements of the claims in combination — including, notably, a pull-back resealable package for discrete food items with a rigid tray — except the required “frame” that was common for cookies, .as shown by Graham; the absence of a- satisfactory resealable package was a known problem for cookies; and the ordinary creativity of the relevant skilled packaging artisan motivated and made predictable the use of the Machinery Update package with a cookie-protecting frame as- a solution to that known problem. Kraft has not shown any *1348 basis in the record for reasonable contrary findings. Those findings, in this case, suffice to justify the overall legal conclusion of obviousness, there being no meaningful argument that the objective indicia, when weighed in Kraft’s favor (as the district court did), can change the ultimate conclusion.
Kraft argues that the district court failed to provide “explicit and clear reasoning providing some rational underpinning” for its invocation of common sense in its motivation-to-combine analysis. Kraft’s Opening Br. 43 (quoting Plantronics, 724 F.3d at 1354). We disagree. The court relied on the record demonstrating the “known problem” of an insufficiently “convenient opening and reclosing arrangement” for cookie packaging and the suggestion in Machinery Update itself that its packaging, with a tray, was usable for a variety of foods, “such as” discrete items like sushi and canapés. Intercontinental, 118 F.Supp.3d at 1035-36.
Kraft also points to the absence of expert testimony for Kellogg on this point. Kraft’s Opening Br. 43. But we have recognized that some cases involve technologies and prior art that are simple enough that no expert testimony is needed. See Wyers, 616 F.3d at 1239 (“KSR and our later cases establish that the legal determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony.”); Perfect Web, 587 F.3d at 1329; Sundance, Inc. v. De-Monte Fabricating Ltd., 550 F.3d 1356, 1365 (Fed. Cir. 2008). What is claimed and described in the ’532 patent — which does not include any new manufacturing equipment- or instructions to produce the described and claimed packaging — makes this such a case.
Kraft next contends that the evidence in the record shows that there was more than one reasonable inference about whether a relevant skilled artisan had a motivation to use the Machinery Update packaging with a frame for cookies. Kraft begins by relying on the assertion that “Kellogg personnel rejected the idea of combining a traditional cookie package with the resealable technology” of the Machinery Update articles. Kraft’s Opening Br. 45. But the record does not support the suggested inference. At best, the cited deposition testimony could establish that a group of Kellogg employees viewed a sample of the Re-Seal It packaging technology at an internal meeting along with other packaging samples brought back from a trade show and Kellogg did not immediately adopt the technology for cookies. See J.A. 6328-29, 6347, 6366-69. But the only evidence in the record about the reason behind that initial decision is that Kellogg did not possess the required equipment and did not then wish to purchase new equipment. J.A. 6329. One company’s temporary decision about an equipment investment is not sufficient to defeat the otherwise-compelled inference that combining the Re-Seal It packaging with familiar cookie-package frames (as in Graham) was a predictable technological solution to the relevant known market problem.
Kraft does not dispute, as its own evidence recited by the district court confirms, that the invention disclosed in its patent helps solve a known problem with cookie packaging (experienced by those consumers who want the option of eating less than a full package of cookies in one sitting). Intercontinental, 118 F.Supp.3d at 1035. The packaging in the Machinery Update articles, with an internal tray to protect the contents and convenient resealing functionality, and its suggestion of use for a variety of discrete food items, makes readily predictable its use for cookies by raising the sides of the tray to form a “frame.” Kraft points to statements by its packaging expert (or Kraft filings based on *1349 such statements) as allegedly supporting a contrary finding. Kraft’s Opening Br. 46-52 (citing portions of J.A. 1769-75, 6134— 35, 6146-53, 6156, 6159-60, 6163-64 6166-67). But the expert’s statements in this case are insufficient to support a reasonable contrary finding.
Kraft’s expert, especially in the PTO, devoted relatively little attention to the Machinery Update articles. He focused instead on the Packaging Netos article, which (unlike the Machinery Update articles) stated that the Re-Seal It packaging described and shown did not use conventional wrapping — the statement that led the Board on reexamination to reverse the examiner’s rejection of Kraft’s claims. Regardless, to the extent that his statements apply directly or indirectly to the Machinery Update packaging, they rest on misreadings of the articles and disregard of the plain significance of other evidence from Kraft itself. See Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1050-51 (Fed. Cir. 2001) (determining that expert declaration not based on reasonable inferences from the material record facts amounts to a conclusory opinion insufficient to prevent summary judgment); see also Scott, 550 U.S. at 380, 127 S.Ct. 1769.
For example, the expert suggested that the Machinery Update articles are focused on layered items like sliced meats and suggest use of a tray only to be removed from the side of the package, not for items like cookies to be accessed from the top by peeling back the resealable flap. Kraft’s Opening Br. 46-52. But the district court correctly explained why the Machinery Update articles do teach top access to trays with unstacked discrete items, giving sushi and canapés as mere examples (“such as”), as well as parallel perimeter portions at the top for the sealing layer to stick to. Intercontinental, 118 F.Supp.3d at 1030-34. We fail to see any other reasonable reading of the Machinery Update articles on these points.[8]
Likewise, the expert noted “many reclo-sure variations,” as Kraft summarizes the point, such as “tin ties, twist ties, adhesive tape for reclosing one end, a clip to pinch the end of the package, a zipper strip added to the end or side of the package, and a pinch seal strip added to an end or side of the package.” Kraft Opening Br. 47. But as far as the record shows, those were among the very alternatives in the prior art that left consumers with the “known problem” with cookie packaging that motivated turning to the resealable Machinery Update packaging. Such known-to-bé-unsatisfactory alternatives provide no basis for questioning the predictability of picking out the Machinery Update packaging as a new solution to the known problem.
Kraft asserts, based on declarations submitted to the PTO (relied on by its expert in this case), that “[a] skilled artisan would not add a reclosure feature to Graham because it is designed for onetime use, by ‘opening at one of its ends,’ ” and “the Graham tray is inexpensive and ‘resiliently flexible’ to conform to the cookies,” whereas the Packaging News packaging “is designed for multiple openings and reclosings” and its “tray is expensive, ‘significantly more rigid,’ and ‘not conformable to the food products.’” Kraft’s Opening Br. 46. But those assertions provide no *1350 reasonable basis for denying the predictability of using prior-art cookie frames like Graham’s in the Machinery Update packaging.
It was a “known problem” for cookie consumers that Graham-like packages did not satisfactorily provide for the “multiple openings and closings” that consumers wanted — and that the Machinery Update packaging made more convenient. As Kraft says,-,“[c]onsumer dissatisfaction with this traditional frame-in-wrapper package was well-known.” Id. at 4. That is what motivated looking to the multiple-use Machinery Update packaging. Moreover, Kraft points to no evidence that the Graham-like frames would not work with the Machinery Update packaging. Nor does the relied-on testimony say anything actually material about cost: it does not say that the resulting cookie package would cost cookie consumers more than the pri- or-art cookie package or that any increase would be sufficient to deter the combination. The expert’s only point about cost was that the cookie frame was less expensive than the Machinery Update tray. But that point says nothing to the effect that the relevant (cookie) consumers would face a cost increase were the cookie makers to use the old frame but replace the surrounding wrappers with the Machinery Update package.
On this record, we conclude, there is no basis for overturning the district court’s conclusion that any reasonable, jury would have to find a motivation to combine.
3
Kraft’s final argument invokes this court’s recognition that a “party challenging validity shoulders- an enhanced burden if the invalidity argument relies on the same prior art considered during examination.” Tokai, 632 F.3d at 1367. According to Kraft, that proposition applies here based on the reexamination, in which Graham, the 2002 Machinery Update article, and the Packaging News article (containing the same photograph as appeared in the 2001 Machinery Update article) were considered. See Kraft Opening Br. 56-60. It suffices to say, however, that in this case the “enhanced burden” proposition provides no basis for a different result.
The “enhanced burden” point certainly confirms a practical truth about litigation: persuading a fact finder that an expert agency' is incorrect on a proposition is likely to be a greater forensic challenge to the advocate than showing the proposition to be incorrect in the absence of a contrary expert-agency determination. See Sciele Pharma Inc. v. Lupin Ltd., 684 F.3d 1253, 1260-61 (Fed. Cir. 2012) (“[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered. Importantly, whether a reference was before the PTO goes to the weight of the evidence, and the parties are of course free to, and generally do, make these arguments to the fact finder.”). This court has not, however, ascribed any larger meaning to the “enhanced burden” point, which, the court has explained, does not mean that something more than clear and convincing evidence is required. Id. In any event, this is not a case in which what the PTO concluded makes a difference, for at least two reasons.
First, as the district court explained, the only express analysis of the Machinery Update articles was by the examiner, who rejected the claims. The Board, which upheld the claims, did not expressly consider those articles, but relied instead on a sentence in Packaging News that does not appear in the Machinery Update articles. Intercontinental, 118 F.Supp.3d at 1028-29. There is no basis for attributing to the *1351 Board an implied assessment of the Machinery Update articles. The record before the Board indicates that the Board simply accepted a premise that those articles were redundant of Packaging News, requiring no separate consideration. There is no specific PTO determination of nonobvi-ousness based on the particular prior art now at issue.
Second, in this case, we think that the showing of obviousness is sufficiently strong that no PTO contrary determination could alter the conclusion about summary judgment. If the substantive eviden-tiary and other arguments made by Kraft do not create a triable issue, as we (and the district court) have concluded, neither could a bare assumption, otherwise unexplained, that the PTO reached a different conclusion based on the prior art here at issue. For that reason as well, we reject Kraft’s final deference-invoking argument against summary judgment of obviousness.
* * *
In Tokai, this court drew the following conclusion on the record before it in affirming a summary judgment of obviousness: “[T]he undisputed facts in this case — including the state of. the prior art, the simplicity and availability of the components making up the claimed invention, and an explicit need in the prior art for [the asserted invention] — compel a conclusion of obviousness as to the subject matter of each of the asserted claims.” 632 F.3d at 1371. For the reasons we have set forth, we agree with the district court that the same conclusion is warranted in this case.
B
In its cross-appeal, Kellogg argues that the district court erred when it granted Kraft summary judgment rejecting Kellogg’s inequitable-conduct charge.[9] The only issue here concerns the arguments Kraft made about Packaging News to the Board during reexamination. We see no reversible error in the district court’s conclusion that Kellogg’s evidence was insufficient to permit a finding of the intent required for inequitable conduct based on Kraft’s reexamination arguments.
Kellogg’s charge rests on a sentence in the Packaging News article — a short article that was the central focus before the Board, including during oral argument, when the Board was specifically looking at and asking about the brief text. The relevant sentence in that article describes the Re-Seal It packaging as not using “conventional wrapping film.” J.A. 4713. Kellogg says that the sentence is a misprint and that Kraft committed inequitable conduct by not so informing the Board.
There is no doubt that the Packaging Material sentence was important to the Board’s decision: the Board relied on that sentence to reverse the examiner’s rejections of Kraft’s claims. But to prevail, Kellogg had to prove that Kraft, in what it did not say about the sentence that was the focus of the Board’s attention, had a “specific intent to mislead or deceive the PTO.” In re Rosuvastatin Calcium Patent Litig., 703 F.3d 611, 519 (Fed. Cir. 2012) (citing Therasense, 649 F.3d at 1287). The intent requirement is demanding: the evidence must be “sufficient to require a finding of deceitful intent in the light of, all the circumstances”; deceptive intent “must be the single most reasonable inference able to be drawn from the evidence”; and “when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.” Therasense, 649 F.3d at 1290-91 (internal quotation marks omit *1352 ted); see Ohio Willow, 735 F.3d at 1351; Ohio Willow Wood Co. v. Alps South, LLC, 813 F.3d 1350, 1358-59 (Fed. Cir. 2016).
Unlike Ohio Willow, this is not a case of withholding documents from the PTO (in Ohio Willow, documents key to corroboration of inventorship) or of making affirmative misrepresentations (in Ohio Willow, about a key participant’s supposed admission somewhere in the record). The Board had the 2002 Machinery Update article in the record, but it was not a basis for the examiner’s rejections on review and so was not the subject of any discussion before the Board.[10] The alleged wrong, moreover, is not what Kraft affirmatively stated about Packaging News. The only alleged wrong is Kraft’s omission of any statement that the sentence in the Packaging News reference on which the Board was directly focusing was actually a misprint. But oven if the sentence was a misprint, the district court properly concluded that the record does not support an inference of deceptive intent under the Therasense standard.
Kellogg presents no admission or anything similar indicating that any relevant Kraft officer or representative during the reexamination actually believed the sentence to be a misprint. Kellogg asks for an inference as to what Kraft had to believe, given the disparity of language between the Packaging News article (“without conventional wrapping film,” J.A. 4713) and the 2002 Machinery Update article (“with conventional wrapping film,” J.A. 4424), that Kraft’s counsel had read both articles, and that a representative of a company selling packaging machines that counts Kraft as one of its biggest customers (affiliated with the reexamination requester) testified that, since “we run with conventional film,” it was obvious that the Packaging News sentence was a misprint, J.A. 6427, 6441. But without more evidence of Kraft’s belief, one reasonable inference on the record — especially given Kellogg’s burden of persuasion — is that Kraft did not believe that there was a misprint.
Kellogg’s evidence from the deposition of Kraft’s counsel provides no suggestion of any awareness of a misprint. See J.A. 6941-45. The same is true as to Kraft’s inventor — appearing also as Kraft’s official company witness under Fed. R. Civ. P. 30(b)(6) — who testified that she did not recognize a misprint in Packaging News at all, much less one based on the difference in language between it and the 2002 Machinery Update, believing that “they were different packaging in different articles,” J.A. 6388, and that if there had been a misprint, it would have been corrected, J.A. 6382-83. In the reexamination, moreover, neither the ex parte requester nor the examiner suggested that the Packaging News article contained a misprint. The absence of such a statement indicates that the alleged misprint was not as obvious as Kellogg claims. The rejections that were then appealed did not involve Machinery Update, which therefore need not have been the subject of reinspection by Kraft during the appeal.
In these circumstances, we think that the district court properly concluded that the Therasense intent standard could not be met.
Ill
For the foregoing reasons, we affirm the judgment of the district court.
No costs awarded to either party.
AFFIRMED

. Kellogg also sought summary judgment of non-infringement, but the district court agreed only as to literal infringement, concluding that the record presented a triable issue as to infringement by equivalence. Intercontinental, 118 F.Supp.3d at 1042-44. We need not discuss either half of that ruling, or any issue except the invalidity and unenforce-ability issues, as to which we affirm the district court’s summaty judgment rulings.

. The '532 patent, which issued from a 2003 application, is governed by the version of § 103 that was in effect before its amendment by the Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3(n)(1), 125 Stat. 284, 293 (2011). See Intercontinental, 118 F.Supp.3d at 1027 n.2.

. Kellogg also alleged that Kraft withheld prior art (the “Fuji Package") in the original prosecution, but the district court concluded, for several reasons, that the evidence offered to support that assertion failed to meet Therasense’s inequitable-conduct standard. Intercontinental, 118 F.Supp.3d at 1045. In this court, Kellogg makes only what amounts to a bare assertion of error on this point, not a meaningful argument for why the district court erred. Kellogg’s Opening Corrected Br. 56-57. For record evidence on the point, Kellogg cites only "Sec. V(C), supra,” which does not exist, and J.A. -4924-26, which does not address inequitable non-disclosure during prosecution. Kellogg has forfeited the point and certainly has not shown error. We do not further address this aspect of the inequitable-conduct issue.

, Whether a skilled artisan would have reasonably expected success, an issue in many *1344 obviousness cases, has not been presented as an issue here.

. See, e.g., Ivera Med. Corp. v. Hospira, Inc., 801 F.3d 1336 (Fed. Cir. 2015); Plantronics, Inc. v. Aliph, Inc., 724 F.3d 1343 (Fed. Cir. 2013); OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc., 701 F.3d 698 (Fed. Cir. 2012); Innovention Toys, LLC v. MGA Entm’t, Inc., 637 F.3d 1314 (Fed. Cir. 2011); Trans *1345 ocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc., 617 F.3d 1296 (Fed. Cir. 2010); TriMed, Inc. v. Stryker Corp., 608 F.3d 1333 (Fed. Cir, 2010); Source Search Techs., LLC v. LendingTree, LLC, 588 F.3d 1063 (Fed. Cir. 2009); Süd-Chemie, Inc. v. Multisorb Techs., Inc., 554 F.3d 1001 (Fed. Cir. 2009).

. See, e.g., Hoffman-La Roche Inc. v. Apotex Inc., 748 F.3d 1326 (Fed. Cir. 2014); Ohio Willow Wood Co. v. Alps S., LLC, 735 F.3d 1333 (Fed. Cir. 2013); Bayer Healthcare Pharm., Inc. v. Watson Pharm., Inc., 713 F.3d 1369 (Fed. Cir. 2013); Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC, 683 F.3d 1356 (Fed. Cir. 2012); MySpace, Inc. v. GraphOn Corp., 672 F.3d 1250. (Fed. Cir. 2012); In re Katz Interactive Call Processing Patent Litig., 639 F.3d 1303 (Fed. Cir. 2011); Tokai Corp v. Easton Enters., Inc., 632 F.3d 1358 (Fed. Cir. 2011); King Pharm., Inc. v. Eon Labs, Inc., 616 F.3d 1267 (Fed. Cir. 2010); Dow Jones & Co., Inc. v. Ablaise Ltd., 606 F.3d 1338 (Fed. Cir. 2010); Media Techs. Licensing, LLC v. Upper Deck Co., 596 F.3d 1334 (Fed. Cir. 2010); Perfect Web Techs., Inc. v. InfoUSA, Inc., 587 F.3d 1324 (Fed. Cir. 2009); Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc., 555 F.3d 984 (Fed. Cir. 2009); Ricoh Co. v. Quanta Comput. Inc., 550 F.3d 1325 (Fed. Cir. 2008).

. See In re Translogic Tech., Inc., 504 F.3d 1249, 1259 (Fed. Cir. 2007) (citing KSR for “the fundamental proposition that obvious variants of prior art references are themselves part of the public domain”); see also In re Huai-Hung Kao, 639 F.3d 1057, 1073 (Fed. Cir. 2011); In re Wiseman, 596 F.2d 1019, 1023 (C.C.P.A. 1979).

. That conclusion applies equally to the dependent claims, whiqh the district court meticulously discussed in relation to the teachings of the prior art at issue. Intercontinental, 118 F.Supp.3d at 1038-41. On appeal, Kraft makes no meaningful argument about the merits of the district court’s document-supported readings. Kraft's assertion that Kraft’s expert asserted contrary readings, Kraft’s Opening Br. 50-52, is doubly conclusory. Kraft has given no sufficient basis for overturning the grant of summary judgment as to the dependent claims any more than as to the independent claims.

. Neither party has suggested that the unen-forceability (of the patent) is of no consequence if the invalidity ruling (as to selected claims) is affirmed.

. The 2001 Machinery Update article, which contains a photograph identical to that in Packaging News, is not in the reexamination record. See J.A. 97-99, 679. Kellogg has not asserted inequitable conduct based on the 2001 Machinery Update article.