Dissenting opinion filed by Circuit Judge Newman.
Prost, Chief Judge.
*1368 Appellant ZUP, LLC ("ZUP") appeals the decision of the United States District Court for the Eastern District of Virginia, which granted summary judgment in favor of Appellee Nash Manufacturing, Inc. ("Nash"). The district court invalidated claims 1 and 9 of U.S. Patent No. 8,292,681 ("the '681 patent") as obvious and, in the alternative, held that Nash does not infringe claim 9. We affirm the district court's holding that claims 1 and 9 are invalid as obvious and do not reach the infringement question.
I
ZUP and Nash are competitors in the water recreational device industry. Nash has been a part of the industry for over fifty years and has designed and manufactured water skis, knee boards, wake boards, and other similar recreational devices. Meanwhile, ZUP is a relative newcomer to the industry, having entered the market in 2012 with its "ZUP Board." The ZUP Board is designed to assist riders who have difficulty pulling themselves up out of the water into a standing position while being towed behind a motorboat.
A
ZUP owns the '681 patent, which includes twelve claims. Generally, the claims of the '681 patent cover a water recreational board and a method of riding such a board in which a rider simultaneously uses side-by-side handles and side-by-side foot bindings to help maneuver between various riding positions. According to the patent, this allows a rider to more readily move from lying prone, to kneeling, to crouching, and then to standing.
Claims 1 and 9 of the '681 patent are at issue in this case. Claim 1 states:
1. A water recreation device comprising:
a riding board having a top surface, a bottom surface, a front section, a middle section, and a rear section;
a tow hook disposed on the front section of the riding board;
first and second handles disposed side-by-side on the front section of the top surface of the riding board aft of the tow hook;
first and second foot bindings disposed side-by-side on the middle section of the top surface of the riding board aft of the first and second handles; and
a plurality of rails protruding from the bottom surface of the riding board and extending substantially the full length of the riding board;
wherein the tow hook includes a rearward-facing concave section sized to receive a tow rope bar and positioned to allow the riding board to be pulled in a forward direction by a tow rope attached to the tow rope bar, *1369 wherein the first and second handles and the first and second foot bindings are configured for simultaneous engagement by a rider to position the rider in a crouching stance facing in a forward direction,
wherein the plurality of rails are disposed relative to a longitudinal axis along the bottom surface of the riding board, the longitudinal axis projecting rearwardly from a reference location substantially central to the front section, and each of the plurality of rails is laterally spaced closer to the longitudinal axis nearest the rear section of the riding board than the each of the plurality of rails is laterally spaced from the longitudinal axis nearest the front section of the riding board thereby allowing the water that moves across the bottom surface nearest the front section of the riding board to funnel towards the bottom surface nearest the rear section of the riding board for the purpose of generating lift force against the bottom surface of the riding board.
'681 patent, claim 1. Likewise, claim 9 states:
9. A method of riding a water recreation device on a body of water comprising:
placing a water recreation device into a body of water, the water recreation device comprising:
a riding board having a top surface, a bottom surface, a front section, a middle section, and a rear section;
a tow hook disposed on the front section of the riding board;
first and second handles disposed side-by-side on the front section of the top surface of the riding board aft of the tow hook; and
first and second foot bindings disposed side-by-side on the middle section of the top surface of the riding board aft of the first and second handles;
attaching a tow rope to said tow hook, said tow rope also attached to a water vehicle;
grasping the first and second handles of the water recreation device to establish a prone start position by a rider;
maintaining said prone start position by the rider until the riding board has achieved a substantially parallel position relative to the surface of the water;
achieving a kneeling position by the rider by placing both knees on the top surface of the riding board;
achieving a crouching position by the rider by placing a first foot into the first foot binding and then placing a second foot into the second foot binding;
grasping the tow rope by the rider by releasing the first and second handles;
removing the tow rope from the tow hook by the rider;
standing on the riding board by the rider while continuing to grasp the tow rope.
'681 patent, claim 9.
In sum, claims 1 and 9 contain the following elements: (1) a riding board; (2) a tow hook on the front of the riding board; (3) a plurality of rails on the bottom surface of the riding board; (4) side-by-side *1370 handles on the front of the riding board; (5) side-by-side foot bindings on the middle of the riding board; and, at least as stated in claim 1, (6) the ability to simultaneously engage the handles and foot bindings to position the rider in a crouching stance.
B
In 2013, ZUP and Nash began discussions about a potential joint manufacturing venture for the ZUP Board. Their negotiations eventually fell through, and Nash brought the accused product, the "Versa Board," to market in May 2014.
Like the ZUP Board, the Versa Board has a tow hook on the front section of the board. Unlike the ZUP Board, however, the Versa Board has several holes on the top surface of the board that allow users to attach handles or foot bindings in various configurations. See J.A. 427-29. Although Nash warns against having the handles attached to the board while standing, see J.A. 430 ¶¶ 22-23, a user could theoretically ignore Nash's warnings and attach the handles and foot bindings in a configuration that mirrors the configuration of the ZUP Board, see J.A. 139.
After seeing the Versa Board displayed at a surf expo in 2014, Glen Duff, ZUP's Chief Innovative Officer and inventor of the '681 patent, approached Keith Parten, Nash's president, to express concern that the Versa Board infringed the '681 patent. After another failed attempt to secure a partnership with Nash, ZUP turned to litigation.
In its complaint, ZUP alleged: (1) contributory infringement of the '681 patent ; (2) induced infringement of the '681 patent ; (3) trade secret misappropriation under the Virginia Uniform Trade Secrets Act; and (4) breach of contract. Nash counterclaimed, seeking declaratory relief as to non-infringement and invalidity.
The district court granted Nash's summary judgment motion with respect to invalidity, thus rendering the infringement claims moot. Specifically, the district court held claim 1 obvious over U.S. Patent No. 5,163,860 ("Clark") in view of U.S. Patent No. 6,306,000 ("Parten '000") ; U.S. Patent No. 7,530,872 ("Parten '872") ; U.S. Patent No. 5,979,351 ("Fleischman") ; U.S. Patent No. 5,797,779 ("Stewart") ; and U.S. Patent No. 6,585,549 ("Fryar"). ZUP, LLC v. Nash Mfg., Inc. , 229 F.Supp.3d 430, 446 (E.D. Va. 2017). The district court also held claim 9 obvious over Clark in view of Parten '000, Stewart, and U.S. Patent No. 4,678,444 ("Monreal"). Id. at 447.
Although the district court recognized that its invalidity decision rendered ZUP's contributory and induced infringement claims moot, id. at 450, it nonetheless conducted an alternative analysis, stating that it would have granted Nash's summary judgment motion with respect to non-infringement of claim 9, id. at 450-55. Finally, the district court granted summary judgment in Nash's favor with respect to the non-patent claims. Id. at 455-56.
ZUP timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
II
We review a grant of summary judgment under the law of the regional circuit. Memorylink Corp. v. Motorola Sols., Inc. , 773 F.3d 1266, 1270 (Fed. Cir. 2014). The Fourth Circuit reviews a grant of summary judgment de novo, using the same standard applied by the district court. Gallagher v. Reliance Standard Life Ins. Co. , 305 F.3d 264, 268 (4th Cir. 2002), as amended (Oct. 24, 2002). Disposition of *1371 a case on summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
Depending on the record in a particular case, "summary judgment of invalidity for obviousness may be appropriate." Intercont'l Great Brands LLC v. Kellogg N. Am. Co. , 869 F.3d 1336, 1344 (Fed. Cir. 2017). In particular, where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." KSR Int'l Co. v. Teleflex Inc. , 550 U.S. 398, 427, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007).
A
The primary issue in this case is whether claims 1 and 9 of the '681 patent are invalid as obvious under 35 U.S.C. § 103(a).[1] Although the "ultimate judgment of obviousness is a legal determination," KSR , 550 U.S. at 427, 127 S.Ct. 1727, it is based on underlying factual inquiries, including (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) any secondary considerations of non-obviousness. Graham v. John Deere Co. , 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Likewise, whether one of skill in the art would have had a motivation to combine pieces of prior art in the way claimed by the patent is also a factual determination. Intercont'l Great Brands , 869 F.3d at 1343.
Here, there appears to be no dispute with respect to the content of the prior art or the differences between the prior art and the '681 patent. And, the parties agree that the relevant level of skill in the art is "a person with at least 3-5 years' experience in the design and manufacture of water recreational devices or [who has] a bachelor's degree in mechanical engineering." ZUP , 229 F.Supp.3d at 438 ; Appellant's Br. 13. The only issues raised on appeal pertain to (1) whether a person of ordinary skill in the art would have been motivated to combine the prior art references in the way claimed in the '681 patent, and (2) whether the district court properly evaluated ZUP's evidence of secondary considerations.
1
A "motivation to combine may be found explicitly or implicitly in market forces; design incentives; the 'interrelated teachings of multiple patents'; 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent'; and the background knowledge, creativity, and common sense of the person of ordinary skill." Plantronics, Inc. v. Aliph, Inc. , 724 F.3d 1343, 1354 (Fed. Cir. 2013) (citing Perfect Web Techs., Inc. v. InfoUSA, Inc. , 587 F.3d 1324, 1328 (Fed. Cir. 2009) (quoting KSR , 550 U.S. at 418-21, 127 S.Ct. 1727 ) ).
The district court first found that all the elements of the claimed invention existed *1372 in the prior art. Specifically, the district court pointed to earlier patents on water recreational boards that included the same elements used in the '681 patent : a riding board, a tow hook, handles, foot bindings, and a plurality of rails on the bottom surface of the riding board. ZUP , 229 F.Supp.3d at 446-47. From this, the district court explained that the '681 patent"identifie[s] known elements in the prior art that aided in rider stability while engaging a water recreational device and simply combined them in one apparatus and method." Id. at 447. The district court then concluded that one of ordinary skill in the art would have been motivated to combine the various elements from the prior art references, noting that such motivation would have stemmed from a desire "to aid in rider stability, to allow a wide variety of users to enjoy the device, and to aid users in maneuvering between positions on a water board"-all motivations that were "a driving force throughout the prior art and have been shared by many inventors in the water recreational device industry." Id.
The record evidence supports the district court's analysis. Although ZUP contends that a person of skill in the art would have been focused on achieving rider stability in a predetermined riding position, the evidence contradicts this assertion. Helping riders switch between riding positions had long been a goal of the prior art. See Clark at 1:25-34 (describing the difficulty of maneuvering from a prone position to a kneeling position and lessening this difficulty by eliminating the need for the rider to hold the tow rope while moving to a kneeling position); id. at 1:40-45 ("As the towing speed increases, the user may either remain prone, pull himself into a kneeling position, or rise to a standing position without worrying about holding the tow rope."); see also Parten '000 at 2:53-54 (describing a rider changing from prone, to kneeling, to sitting, to standing); Parten '872 at 3:52-58 ("The present invention ... increases the likelihood that a young, weak or otherwise inexperienced rider of the aquatic recreational device will achieve proper body positioning on the aquatic recreational device."). And the only evidence ZUP points us to is the testimony of its expert, noting the "general frustration to the industry that there was no product that would enable the weakest and most athletically challenged members of the boating community to ski or wakeboard." Reply Br. 4 (citing J.A. 414 ¶ 15).
The prior art accomplished this goal of helping riders maneuver between positions by focusing on rider stability. Indeed, ZUP even admits that achieving rider stability is an "age-old motivation in this field." Appellant's Br. 22. Such stability was enhanced in the prior art through the same components employed in the '681 patent : tow hooks, handles, foot bindings, and other similar features. See Fleischman at 2:45-46 (describing handles that "allow the riders to hang on while being towed"); id. at fig. 1 (depicting side-by-side handles on the front section of a water sled); U.S. Patent No. 5,083,955 ("Echols") at 1:39-40 (describing "a pair of stirrups for the rider's feet"); id. at fig. 1 (depicting foot bindings); Clark at 2:30-34 (describing how a rider may hold a leash attached to the riding board to aid in rider stability); Stewart at 2:57-63 (describing a "palm grip which provides a rider handhold" to increase stability).
In the face of the significant evidence presented by Nash regarding the consistent desire for riders to change positions while riding water recreational boards (and the need to maintain stability *1373 while doing so), and given that the elements of the '681 patent were used in the prior art for this very purpose, there is no genuine dispute as to the existence of a motivation to combine.[2]
2
ZUP's second argument on appeal relates to the district court's analysis of ZUP's evidence of secondary considerations. Secondary considerations "help inoculate the obviousness analysis against hindsight." Mintz v. Dietz & Watson, Inc. , 679 F.3d 1372, 1378 (Fed. Cir. 2012) ; see also Graham , 383 U.S. at 36, 86 S.Ct. 684. As explained below, however, ZUP's minimal evidence of secondary considerations does not create a genuine dispute of fact sufficient to withstand summary judgment on the question of obviousness.
ZUP contends that the district court improperly shifted the burden to prove non-obviousness to ZUP, stating that "the District Court could not possibly find an absence of material fact when Nash-the challenger with the burden of proof-introduced no evidence [as to secondary considerations] and ZUP submitted two affidavits demonstrating secondary considerations." Reply Br. 5; see also Appellant's Br. 23-25.
Any concerns regarding improper burden allocation can be quickly dismissed. Our precedent is clear that "the burden of persuasion remains with the challenger during litigation because every issued patent is entitled to a presumption of validity." Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd. , 719 F.3d 1346, 1353 (Fed. Cir. 2013). While this burden of persuasion remains with the challenger, a patentee bears the burden of production with respect to evidence of secondary considerations of nonobviousness. Id. Here, the district court adhered to our precedent in analyzing the evidence presented. Although ZUP takes issue with the court's statement that "ZUP has failed to establish either that a long-felt but unresolved need existed in the water recreational device industry or that its product somehow solved any such need," see Appellant's Br. 23-24 (quoting ZUP , 229 F.Supp.3d at 449 ), the district court was merely referring to the burden of production with respect to such evidence, see, e.g. , ZUP , 229 F.Supp.3d at 449 (finding "that ZUP has provided no evidence apart from conclusory statements made by its expert that any long-felt but unresolved need existed in the industry"; "that ZUP has failed to provide any evidence that others in the industry attempted and failed to make a board with stabilizing features"; and that "ZUP has provided no evidence that Nash attempted to independently create the device described in the '681 patent and failed"); see also Prometheus Labs., Inc. v. Roxane Labs., Inc. , 805 F.3d 1092, 1102 (Fed. Cir. 2015) (rejecting the same argument based on similar language in a district court opinion where we were persuaded that the district court had merely been referring to the patent owner's burden of *1374 production). It is clear that the district court kept the ultimate burden of persuasion on the patent challenger throughout the obviousness analysis. Any argument that the district court improperly shifted the burden is therefore without merit.
ZUP's argument also suggests that summary judgment could not be granted based on the record evidence. This argument is similarly unavailing.
Obviousness is ultimately a legal determination, and a strong showing of obviousness may stand "even in the face of considerable evidence of secondary considerations." Rothman v. Target Corp. , 556 F.3d 1310, 1322 (Fed. Cir. 2009) ; see also Motorola, Inc. v. Interdigital Tech. Corp. , 121 F.3d 1461, 1472 (Fed. Cir. 1997) ("In reaching an obviousness determination, a trial court may conclude that a patent claim [was] obvious, even in the light of strong objective evidence tending to show nonobviousness.").
Before the district court, ZUP presented evidence of three secondary considerations: long-felt but unresolved need; copying; and commercial success. On appeal, ZUP focuses only on long-felt but unresolved need and copying. See Appellant's Br. 24-25. Accordingly, we do not address any evidence of commercial success.
With respect to long-felt but unresolved need, ZUP proffered testimony from its expert, James Emmons, stating that "[f]or over 50 years, advances in the water-sports market focused on creating stability for a rider strictly within one of the three segments (tubing, knee-boarding, or skiing/wakeboarding)" and that "it was a general frustration to the industry that there was no product that would enable the weakest and most athletically challenged members of the boating community to ski or wakeboard." Appellant's Br. 24 (citing J.A. 414 ¶¶ 15-16). ZUP contends that it then corroborated this testimony with Nash's "enthusiastic acceptance" of the ZUP Board, pointing to a statement by Nash's president, Mr. Parten.[3] Appellant's Br. 24. During an initial phone conference in 2014, Mr. Parten complimented the ZUP Board, telling ZUP: "You have a great product by the way!" J.A. 139 ¶ 23. Further, after Mr. Duff explained his goal to market the ZUP Board to "Wally Weekender," Mr. Parten agreed, stating: "Think you are spot on with Wally Weekender. Same guy that rides a kneeboard and tube. Want to be able to do it the first time every time." J.A. 139 ¶ 23. In ZUP's view, Mr. Parten's positive response to the ZUP Board demonstrates the existence of a long-felt but unresolved need for a water recreation device that eases the process of achieving a standing position.
As we have said before, "[w]here the differences between the prior art and the claimed invention are as minimal as they are here, however, it cannot be said that any long-felt need was unsolved." Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC , 618 F.3d 1294, 1304-05 (Fed. Cir. 2010). That is true here, where the differences between the claimed invention and the prior art are minimal. Moreover, the record evidence indicates that the claimed invention was not the first to achieve the goal of helping users maneuver between positions on a water recreational board. See id. (noting that the alleged unresolved need had been met by prior art devices); see also Clark at 1:25-34 (describing the *1375 difficulty of maneuvering from a prone position to a kneeling position and lessening this difficulty by eliminating the need for the rider to hold the tow rope while moving to a kneeling position); id. at 1:40-45 ("As the towing speed increases, the user may either remain prone, pull himself into a kneeling position, or rise to a standing position without worrying about holding the tow rope.").
ZUP presented even less compelling evidence of copying. See J.A. 139-40 (Emmons Decl.); J.A. 417 ¶¶ 6-7 (Duff Decl.). "Our case law holds that copying requires evidence of efforts to replicate a specific product, which may be demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product." Wyers v. Master Lock Co. , 616 F.3d 1231, 1246 (Fed. Cir. 2010). Nash did obtain a sample product from ZUP during the parties' initial business discussions. J.A. 419 ¶ 5 (Parten Decl.). But, the evidence ZUP points us to suggests that, for Nash's Versa Board to resemble the claimed invention, a user would need to ignore Nash's instructions on how to use the Versa Board-instructions that specifically discourage users from keeping the handles attached to the board while standing. See Appellant's Br. 25 (emphasizing the district court's statement that "it is feasible for a user to ignore [Nash's] instructions and attach both the handles and the foot bindings in a configuration that is nearly identical to the ZUP Board"); see also J.A. 139.
In sum, we agree with the district court's assessment of the summary judgment record. Even drawing all reasonable inferences in favor of ZUP, such evidence is insufficient to withstand summary judgment on the question of obviousness. The weak evidence of secondary considerations presented here simply cannot overcome the strong showing of obviousness. See Ohio Willow Wood Co. v. Alps S., LLC , 735 F.3d 1333, 1344 (Fed. Cir. 2013) ("[W]here a claimed invention represents no more than the predictable use of prior art elements according to established functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness.").
We have considered ZUP's remaining arguments and find them unpersuasive. As such, we hold that summary judgment as to obviousness is appropriate on this record.
B
ZUP also appeals the district court's alternative holding that Nash does not infringe claim 9 of the '681 patent. Because this court affirms the district court's holding of invalidity, we do not address the district court's alternative holding as to non-infringement.
III
For the foregoing reasons, this court affirms the district court's holding that claims 1 and 9 of the '681 patent are invalid as obvious.
AFFIRMED

Section 103 has since been amended. See Leahy Smith America Invents Act, Pub. L. No. 112-29, sec. 3(c), § 103, 125 Stat. 284, 287 (2011) ("AIA"). Because the application that led to the '681 patent was filed before March 16, 2013, pre-AIA § 103(a) applies. See id. sec. 3(n)(1), 125 Stat. at 293; Redline Detection, LLC v. Star Envirotech, Inc. , 811 F.3d 435, 449 n.7 (Fed. Cir. 2015).

To the extent ZUP argues that the prior art references do not teach or suggest combining the various stability components for simultaneous use, this is unavailing. "A person of ordinary skill is also a person of ordinary creativity, not an automaton." KSR , 550 U.S. at 421, 127 S.Ct. 1727. Given the consistent focus on rider stability in this industry, it would have been obvious to one of skill in the art to have a rider use both the handles and the foot bindings at the same time while maneuvering between riding positions. This is simply "the predictable use of prior art elements according to their established functions." Id. at 417, 127 S.Ct. 1727.

Mr. Parten is the named inventor on several patents, including two of the prior art references relevant to this appeal-Parten '000 and Parten '872.